# Pearson *versus* Hartman.

1. The owner of a certain lot of ground conveyed the same to trustees
to be used as a grave-yard, reserving " the right and privilege to and for
the said grantor, and every member of his family or their offspring, to
mark off within the boundaries of the above-described lot, one square
perch of ground in any locality thereof where they may think proper for
their own and separate use forever for the burial of the dead." *Held*,
that the privilege thus reserved was personal to the grantor and his family,
and was incapable of assignment to a stranger.

2. A stranger, claiming under an assignment from the said grantor of
all his right, title and interest under said reservation, took possession of
a lot in the said grave-yard without due authority from the trustees, and
erected a fence round it. The trustees notified him to remove the fence,
and, on his failing to do so, caused the same to be demolished. In an
action of trespass by the stranger against the persons removing the fence
under the authority of said trustees—*Held*, that the defendants were enti-
tled to judgment.

March 6th 1882. Before Sharswood, C. J., Mercur, Gordon,
Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas, of *Lehigh county :* Of
January Term 1882, No. 156.

Trespass quare clausum fregit, by Isaac Hartman against
Henry B. Pearson and seven others, to recover damages for
removing an iron fence from a plot of ground in the cemetery
of the Friedensville Union Church.

On the trial, before Myers, P. J., the following facts ap-
peared :

In 1859, Jacob Correll granted and conveyed to " John
Schleider, one of the elders and trustees of the Lutheran con-
gregation, and Henry B. Pearson, one of the Evangelic Reform-
ed elders and trustees of 'Friedens Kirche,'" and their
successors, one acre and ten perches of ground, to have and to
hold the same to the said John Schleider and Henry B. Pearson
and their successors as trustees of the said congregations and to
and for the only use and behoof for a grave-yard for the burial

of the dead of the present members of the said congregations and to and for the use of them for said purpose, who shall hereafter be joined to them in community or church-fellowship, and to and for no other use, intent or purpose whatsoever forever"—and reserving "the right and privilege to and for the said Jacob Correll and every member of his family or their offspring to mark off within the boundaries of the above-described lot, one square perch of ground in any locality thereof where they may think proper for their own and separate use forever for the burial of their dead."

On May 12th 1876, Jacob Correll, not having personally availed himself of his reserved right, executed the following paper :

"BETHLEHEM, May 12th 1876.

" For value received I assign unto you all my right title, interest and demand, to Isaac Hartman, of my square rood of ground in New Grave Yeard and reseived payment in full, for the amount of ten dollars.

"JACOB CORRELL."

Isaac Hartman, the assignee named in said paper, was a member of the Lutheran congregation, but was not related to Jacob Correll. He took possession of a lot, which one of the members of the vestry staked off for him at his request, and in November 1877 he enclosed said lot with an iron fence. In January 1878, John Mohr and Conrad Laible, two of the trustees, served a written notice on Hartman to the effect that he was considered a trespasser, and requiring him to remove said fence within ten days, otherwise "such measures will be taken as will be necessary to clear said ground of said obstructions." This notice was signed by said two trustees " in behalf of the Lutheran and German Reformed congregations at Friedensville." Hartman paid no attention to this notice, whereupon the defendants removed the fence.

The court instructed the jury, inter alia :

" We charge you, therefore, as the law of this case, that the defendants were trespassers in interfering with the plaintiff's possession by removing his fence, and the only question for your determination is what amount of damages is the plaintiff entitled to recover.

" The plaintiff has submitted two points:

" 1. Under the evidence in the case the verdict must be for the plaintiff.

" 2. If the jury believe that the wrongs admitted to have been done by the defendants, were done maliciously, the jury may assess vindictive damages.

" These points are affirmed, reserving, however, the legal

question presented by the uncontradicted testimony whether the plaintiff is entitled to judgment on the verdict, or whether judgment shall be entered in favor of the defendants notwithstanding the verdict." (Exception.).

Verdict for plaintiff, for $82.50. The court subsequently overruled a motion by defendants for judgment in their favor, non obstante veredicto, and entered judgment for the plaintiff, on the points reserved, for the amount of the verdict. The defendants thereupon took this writ, assigning for error, the above action of the court in reserving the question of law, in directing a verdict for plaintiff and in entering judgment on the verdict.

*C. J. Erdman*, for the plaintiffs in error.—The reservation was bad, there being some disputed facts in the case. One such disputed fact is fatal to a reservation. To constitute a good reservation of a question of law, the facts out of which it arises must be found by the jury, or agreed upon by the parties, and be distinctly stated in connection with statement of the precise question reserved: Robinson *v.* Myers, 17 P. F. S. 18; Clark *v.* Wilder, 1 Casey 314; Commonwealth *v.* McDowell, 6 W. N. C. 73; Miller *v.* Hershey, 9 P. F. S. 67.

[SHARSWOOD, C. J.—If the court had entered judgment on the reserved point for the defendants, non obstante veredicto, the question as to the regularity of the reservation would arise, but as the court entered judgment on the verdict, the only question is, was the court right in law.]

The reservation in the deed to the trustees was personal to the grantor. His assignee took no title by the pretended assignment, and his erection of the fence was an unlawful obstruction which the defendants had a right to remove after notice. For such removal they are not liable to the plaintiff in trespass: 1 Hilliard on Torts 600, 659; Rung *v.* Shoneberger, 2 Watts 23; Jackson *v.* Rounseville, 5 Met. 127; Unangst *v.* Shortz, 5 Whart. 506.

*Edward Harvey* and *John D. Stiles*, for the defendant in error.—The plaintiff's right of action did not depend on title under the reservation and assignment; his actual naked possession was sufficient to support the action against a wrongdoer, or any one who does not exhibit a better title. The defendants were individual members of the congregation, not delegated to act by the trustees or the congregation. As such they cannot set up any defect in our title as a justification. They as individuals were not unlawfully disturbed in their rights, and could not forcibly remove even an unlawful intruder.

Mr. Justice MERCUR delivered the opinion of the court, October 2d 1882.

[Pearson *v.* Hartman.]

The reservation under which this contention arises, is made in clear and distinct language. It is "to and for the right and privilege of the grantor and every member of his family or their offspring," to mark off and use one square perch of ground "for their own and separate use forever, for the burial of their dead." The privilege was thus personal to himself and family. He did not reserve any power to assign and transfer the right and privilege of burial to a stranger to his family. The defendant in error acquired no right under his alleged purchase from the former grantor to locate and appropriate the lot to his own use: Suplee *v.* Hansell, 5 Harris 384.

The burial grounds were conveyed to two persons, that is, to an elder and trustee of each church and congregation which they severally represented, and to their successors, in trust as a grave-yard for the burial of the dead of the German Reformed and Lutheran congregations respectively. The church edifice was used and occupied by each on alternate Sundays, and the burial ground was common to both of them. Each congregation has one trustee who has the care and supervision of the property; and the church vestry of each consists of seven members. Without authority from either of the trustees, or the assent of either body of the vestry, the defendant in error took possession of a lot in the centre of the grounds, and erected a fence around it. It is true the lot was staked off by one vestryman and an agent of the church-yard, but they are not shown to have had any authority so to do. Their action was not only in violation of the trust under which the property was held, but it did not receive the approval of the congregations, church vestry, or trustees. The trustees gave written notice to the defendant in error to remove the fence. He refused or declined so to do. Afterwards the plaintiffs in error removed it under authority from the trustees, and with the approval of so many of the congregation as were consulted. This removal constitutes the alleged trespass.

The former owner of the property did not convey, by virtue of his alleged transfer, any title to the defendant in error. He acquired no right to erect the fence from those holding the title. It was erected without due authority, and continued against the expressed wish of the owners of the land. The notice given by the trustees having been disregarded, the plaintiffs in error, who acted under them, had due authority to remove it. One of the plaintiffs in error, and the most active in the removal, was one of the trustees to whom the conveyance of the whole property was made, and he and the others were members of the congregations interested therein.

Under the whole evidence, we think the defendant in error failed to maintain his action, and the learned judge

erred in entering judgment in his favor on the points reserved. The specifications of error are therefore sustained.
Judgment reversed and now judgment in favor of the plaintiffs in error non obstante veredicto.